IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| TEVIN WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:21-cv-03138-RK |
| | ) |
| SUPERINTENDENT MICHELE BUCKNER, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Petitioner Tevin Williams, a convicted state prisoner confined in the South Central Correctional Center, has filed this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. After careful consideration and for the reasons set forth below, it is **ORDERED** that:

(1) Petitioner's habeas petition is **DENIED**;

(2) Petitioner's request for an evidentiary hearing is **DENIED**;

(3) a certificate of appealability is **DENIED**; and

(4) this case is **DISMISSED**.

### I. Statement of Facts

The underlying facts of this case are as follows, as set out by the Missouri Court of Appeals on direct appeal:

> On May 1, 2013, Victim [John Lee] was staying at the Interstate Inn in Springfield, which was adjacent to the Fairvue Apartments. Around 2:45 a.m. that morning, Victim received a phone call. The caller came over and picked up Victim in the back parking lot of the hotel. Victim asked the caller to drive him to the Kum & Go convenience store.
>
> After the two returned to the Interstate Inn, Victim got out of the car and saw three men approach him from the back of the car. Victim recognized Defendant, who was carrying a chrome nine-millimeter semi automatic handgun. After one of the men said, "Give it up" or "Wassup," Victim took a swing at one of them to defend himself. Victim was shot from the front and took off running. He was shot again from behind. Victim was shot a total of eight times and was bleeding profusely. A friend of Victim called 911.
>
> Springfield Police Officer Dak Henning was on duty that morning. Around 3:00 a.m., Officer Henning was dispatched to the Fairvue Apartments to investigate a report of a male being shot in the parking lot. After Officer Henning and another

officer arrived, they were approached by someone who told them a person who had been shot was in Room 608.

As the officers approached Room 608, they spotted what appeared to be blood on the sidewalk and on the door. Through the doorway, the officers saw Victim. He had sustained gunshot wounds and was leaning against the bed. Medical personnel arrived to attend to Victim, who was taken to Mercy Hospital. Victim suffered a gunshot wound to the face, another to his head, one to his knuckle, one in his side, two in the buttocks, and one in his lower thigh.

At the hospital, Victim was questioned by Officer Michael Evans (Officer Evans). Victim said that he had been shot by Defendant. Later, Victim was shown a photo lineup by Detective Kent Shipley (Det. Shipley). Within seconds, Victim identified Defendant from the photo lineup as the shooter.

Det. Shipley later interviewed Chelsea Brashear (Brashear). She had been living with Desmond "Duzzy" Williams, who is Defendant's cousin. According to Brashear, around the beginning of May 2013, Defendant came over with a group of friends. Duzzy gave Defendant a gun that Duzzy had stored in his closet and wrapped in a t-shirt. Defendant told Duzzy he would be back "when it was done." Later, Defendant returned to the apartment, shaking badly and visibly scared. Defendant stated that he thought he "killed him because he emptied the gun on him." Defendant returned the gun to Duzzy.

(Doc. 7-6 at 9-10.)

Petitioner was charged with first-degree assault and armed criminal action. (Doc. 6-2 at 18.) After a jury found Petitioner guilty of these crimes, he appealed his conviction, which was affirmed. (Docs. 7-5, 7-6). Petitioner then timely sought post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. (Docs. 7-10 at 33-56 (initial motion), 59-71 (amended motion).) Following an evidentiary hearing, the motion court denied all of Petitioner's claims for post-conviction relief (*id.* at 72-86), and the Missouri Court of Appeals affirmed. (Docs. 7-15, 7-16.)

II. **Standard**

State prisoners who believe they are incarcerated in violation of the Constitution or laws of the United States may file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before doing so, however, petitioners must exhaust their state remedies. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). "[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotation and citation omitted).

This Court's review of the petition for habeas corpus is limited by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. *Id.* at 97. AEDPA "bars relitigation

2

[in federal court] of any claim adjudicated on the merits in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)." *Harrington*, 562 U.S. at 98. Accordingly, a state habeas petitioner is not entitled to relief unless the state court proceedings:

> (1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d).

## III. Analysis

Petitioner raises three grounds seeking federal habeas relief from his state conviction and sentence. First, Petitioner raises a challenge under *Brady v. Maryland*, 373 U.S. 83 (1963), arguing the State improperly withheld from the defense four pending felony charges as to John Lee, the victim and key prosecution witness. Second, Petitioner argues trial counsel was ineffective for eliciting prejudicial corroborative testimony from a defense witness. Finally, Petitioner argues trial counsel was ineffective for failing to investigate and subpoena three individuals to testify as defense witnesses at trial. The Court will address each claim, below.

### A.   Ground One

Petitioner argues the State withheld certain impeachment evidence as to John Lee, the victim, who testified at trial and identified Petitioner as the shooter, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Petitioner argues at the time of his trial, law enforcement had completed four probable cause statements as to drug and felony stealing offenses by Lee, but that none of these probable cause statements were disclosed to the defense at the time of Petitioner's trial. Moreover, Petitioner argues the State did not charge Lee with these felony offenses or file these probable cause statements until after Petitioner's trial. Petitioner states that Lee later pleaded guilty to these four felony charges and was sentenced only to a term of probation and 120 days' treatment for each offense.

In response, the State argues this claim is procedurally defaulted, barring federal habeas review, because Petitioner failed to raise it before the state courts on direct appeal or in his post-conviction proceedings. *See Christenson v. Ault*, 598 F.3d 990, 995 (8th Cir. 2010) (*Brady* claim procedurally defaulted in § 2254 proceeding when not presented to state court); *Evans v. Luebbers*, 371 F.3d 438, 443 (8th Cir. 2004) (same); § 2254(b) (a federal habeas petitioner must exhaust

3

remedies available in state courts).  Petitioner does not contest this claim is procedurally defaulted, but instead argues the procedural bar to federal habeas relief can be overcome "because the evidentiary basis to support this claim was not known to petitioner at the time of his trial or at the time of his direct appeal."  (Doc. 13 at 24.)

Although procedurally defaulted, Petitioner's *Brady* claim may yet be reviewable in this habeas proceeding if he can show both cause for the default and prejudice from the violation of his constitutional rights.  *Evans*, 371 F.3d at 443 (citing *Coleman*, 501 U.S. at 750).  In the specific context of a *Brady* claim on habeas review, the Supreme Court has explained the required showing of cause and prejudice "parallel[s]" several components of a *Brady* violation, which consist of the following:  (1) "[t]he evidence at issue . . . [is] favorable to the [defendant], either because it is exculpatory, or because it is impeaching"; (2) the evidence was "suppressed by the State, either willfully or inadvertently"; and (3) the suppression of such evidence prejudiced the defendant.  *Stickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Brady*, 373 U.S. at 87 ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

The third component of a *Brady* claim, prejudice, means "the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  *Morales v. Ault*, 476 F.3d 545, 554 (8th Cir. 2007) (quoting *Strickler*, 527 U.S. at 281); *accord Banks v. Dretke*, 540 U.S. 668, 698 (2004) ("Unless suppressed evidence is material for *Brady* purposes, its suppression does not give rise to sufficient prejudice to overcome a procedural default"; and the *Brady* materiality standard is satisfied "when the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict") (cleaned up).

There is no question the *Brady* disclosure requirement applies to impeachment evidence of the kind cited by Petitioner here.  *See United States v. Bagley*, 473 U.S. 667, 676 (1985).  Similarly, there is little question the subject evidence was "suppressed" since it was known at least to law enforcement at the time of Petitioner's trial.  *See Stickler*, 527 U.S. at 280-81 ("the [*Brady*] rule encompasses evidence known only to police investigators and not to the prosecutor") (citation and quotation marks omitted).  The critical factor here, then, is whether the impeachment evidence cited by Petitioner is material under *Brady*.  Ultimately, whether impeachment evidence is material

for *Brady* purposes (that is, whether the suppression of the impeachment evidence is prejudicial to the defendant) requires an examination of the "undisclosed impeachment evidence . . . viewed in context, alongside the witness's testimony, in light of any other impeachment evidence, and in light of corroborating evidence that bears on the witness's credibility." *Pederson v. Fabian*, 491 F.3d 816, 826 (8th Cir. 2007) (citation omitted).

Initially, the Court notes that despite the State's suggestion that Petitioner would not have been able to use this information to impeach Lee's testimony at trial, (*see* Doc. 14 at 20-21), it appears this information may well have been permitted under Missouri law to impeach Lee's testimony. *See Williams v. State*, 386 S.W.3d 750, 753 (Mo. banc 2012) (noting that while "[g]enerally a witness cannot be impeached by an arrest, investigation, or criminal charge that has not resulted in a conviction," "a party may use such information to demonstrate: (1) a specific interest of the witness; (2) the witness's motivation to testify favorably for the state; or (3) that the witness testified with an expectation of leniency") (citation and quotation marks omitted); *accord State v. Johnson*, 603 S.W.3d 371, 378 (Mo. Ct. App. 2020).

Indeed, at trial and prior to Lee's testimony, defense counsel independently brought up the issue of potential pending charges by the State against Lee, and the trial court took up the issue whether an inquiry into these matters would be permitted during Lee's tesitmony:

> [PROSECUTOR]: [Motion in limine number] 7, number of arrests, municipal convictions or specific allegations of immorality of any witnesses which did not lead to convictions.
>
> [DEFENSE COUNSEL]: Judge, my only concern on that is John Lee has a arrest that took place right before our last dep – or the deposition. We've had two depos in this particular case. Right before the first deposition, Mr. Lee had been arrested, his house raided, and he had been held for 24 hours and then released. Charges have not been filed, but they are still – I guess would be the argument under advisement in some way. They're probably waiting on a lab. I don't know. But I do think that that's something that I can ask Mr. Lee, if he has any expectation of any leniency for his testimony here today.
>
> THE COURT: [Prosecutor]?
>
> [PROSECUTOR]: I understand [defense counsel]'s argument. I just don't believe it falls under the fact that he's – not only has he not been convicted, he hasn't been charged with anything at this point in time. I can say that I am absolutely unaware of any case under advisement in our office with regard to that. And so I don't know how the State can be – the prosecutor's office can be held accountable for something that we are absolutely unaware of. I mean, that hasn't even been submitted to us.

5

THE COURT: That's what I'm going to ask here. If he's been arrested, has there been a probable cause statement submitted to the prosecutor?

[PROSECUTOR]: Not that I'm aware of, Your Honor, no.

THE COURT: [Defense counsel], do you have any knowledge to the contrary?

[DEFENSE COUNSEL]: I don't, Your Honor. Obviously, that's beyond my control. That could easily be held awaiting, you know, this case resolving. It is not something I have control of. And I'm not saying the State would actually do that. It's within the police officer's investigation. I don't have any evidence of wrongdoing in any manner. I don't want to imply that in any way. But I don't have any evidence that the case has been submitted to the prosecutor's office, nor would I have access to that information.

[PROSECUTOR]: And the other side to that, that I would say, is that the witnesses, the law enforcement officers that we're going to call, I don't believe they have any knowledge of it either because that was done by a completely different unit.

THE COURT: If the State does not have any cases under advisement, then the motion in limine is granted. We are going to limit it to those matters of impeachment that are encompassed within Chapter 491. The ruling might be different if the prosecutor had control over whether or not a charge is going to be filed against one of their witnesses.

[PROSECUTOR]: Your Honor, if I could, I might ask for just a few minutes so I can double-check because I certainly don't want to misrepresent anything to the Court.

THE COURT: I presume what you represented is accurate and you can check when we go off the record.

. . .

[PROSECUTOR]: In our previous discussion with regard to one of the motions in limine which had to do with prior bad acts, I believe, we were discussing whether the victim in the case had a case under review with the prosecutor's office. Upon further checking, we do find in fact that the situation to which [defense counsel] spoke, yes, the prosecutor's office has received a report from law enforcement. It is under review in the prosecutor's office. No charges have been made. That is the extent of my personal knowledge of the matter.

THE COURT: Okay. [Defense counsel].

[DEFENSE COUNSEL]: Judge, I do believe, then, I would have the opportunity to at least put out there that in March of 2014 that he was arrested, and even if it's a quick answer, you know, Are you aware that charges are pending against you? Are you hoping for some sort of better disposition in those cases by your testimony here? Or even if the State asks, I mean, that's obviously their prerogative if they want to address that in their direct. But I think that that at least allows me to open the door to that very limited circumstance, because I've dealt with, obviously, many people in the past, including my own clientele, who hope that their testimony, even in cases in which their victims will somehow benefit their ability for future charges.

> [PROSECUTOR]: Still have to rely on the fact that those charges – the charges have not been brought. And with regard to prior acts, the statute speaks to convictions. I can tell the Court there is no deal in place. There is nothing like that, again, that I'm aware of, and I'm the one that's controlling this case.
>
> THE COURT: I'm not suggesting there is a deal in place. But it is within the power of the State at this point to charge or not to charge this witness, so the witness can be asked as to whether or not he's expecting a deal or whether or not he's hoping for a deal. So my earlier ruling is changed. You can bring it up on direct or [defense counsel] can bring it up but it's limited to that, but that's not irrelevant so that can be done.

(Doc. 7-1 at 270-81.)

At the conclusion of its direct examination of Lee, the prosecutor asked Lee:

> Q. (by [Prosecutor]) Mr. Lee, I'm going to ask you a question, while this particular case was pending, while it was waiting to come to trial, okay, was there a time when there was a search warrant executed on your residence?
>
> A. Yes.
>
> Q. To date, has any charges, that you're aware of, has any charges been filed against you?
>
> A. No.
>
> Q. Are you aware of any agreement, arrangement, deal, bargain, between yourself and the prosecutor's office or law enforcement with regard to that incident and your testimony here today?
>
> A. No.

(*Id.* at 302.) Defense counsel did not question Lee on this topic any further during cross-examination.

At trial, Lee testified as the victim and sole eyewitness of the shooting. He testified around 2:45 AM, an individual known as "Tall Nick" picked him up from a local hotel and they drove to a Kum & Go store approximately five minutes away. (*Id.* at 286 & 287.) Lee testified they came "straight back" from the store and when they arrived back at the parking lot where he had been picked up and as he was getting out of the car, three persons approached him from the back of the vehicle. (*Id.* at 287.) As they approached him, they stated, "Give it up or wassup." (*Id.*) Lee testified he swung at them to protect himself and turned to run away. (*Id.* at 289-90.) As he was running away, Lee was shot multiple times from behind. (*Id.* at 291.) At trial, Lee identified Petitioner as one of the individuals who had approached him and that he had a chrome gun. (*Id.* at 293.) Lee testified while he was at the hospital, he told police who were investigating the

shooting that "Tevin Williams did it," and identified a vehicle Petitioner drove as a "gold truck, or something like that." (*Id.* at 298-99.)

Additionally, the police officer who spoke with Lee at the hospital in the emergency room testified when asked who shot him, Lee stated it was a "mixed-race male" who was named "Trevan or possibly a Tevin," although in his report the officer notated "Trevan." (*Id.* at 358.) Later, Lee positively identified Petitioner as the shooter when shown a photo-lineup. (*Id.* at 301-02.) The detective who showed Lee the photo-lineup testified Lee identified Petitioner as the shooter within "several seconds." (*Id.* at 373.)

On cross-examination, defense counsel did not inquire further about Lee's recent arrest, although as Petitioner concedes, defense counsel was at least aware of Lee's arrest and the circumstances surrounding it. Instead, defense counsel questioned Lee about his prior criminal history that included several felony convictions, as well as his drug use just prior to the shooting, during which Lee admitted he was under the influence of drugs, including marijuana potentially laced with amphetamines, and alcohol at the time of the shooting. (*Id.* at 312-16.) In addition, defense counsel repeatedly impeached Lee's testimony with prior deposition testimony, including his prior deposition testimony that he had never seen, known, or encountered Petitioner before the shooting. (*Id.* at 320.) Additionally, defense counsel questioned Mr. Lee about his erroneous identification of "Tall Nick" as the individual who drove him to Kum & Go that morning:

> Q. And that's who you knew as Tall Nick?
>
> A. Yes, sir.
>
> Q. Now, later, you've indicated that this individual, this person that you circled, was not actually involved in the incident that night; is that correct?
>
> A. Yes, sir.
>
> Q. And in fact it was somebody else. And you misidentified Nicholas – this Tall Nick person, this person here, as being involved in the incident; is that fair to say?
>
> A. The driver of the car, yeah.
>
> Q. Right. So this person that you said was the driver of the car and circled as to driver, is not actually the driver?
>
> A. Yes, I heard about that later.
>
> Q. All right. And so you were wrong. Misidentified this individual as being involved?
>
> A. Yes, sir.

(*Id.* at 310-11.) Finally, defense counsel pitted Lee's testimony that he told a police officer at the hospital that the shooter was Tevin Williams with the police officer's statement in his report that Lee told him it was somebody with a name similar to "Trevan." (*Id.* at 341.)

As the trial record reflects, Lee's testimony on direct- and cross-examination was impeached with his extensive criminal history, inconsistencies in his testimony and prior statements. Also, however, Lee's testimony was corroborated by statements he made to police shortly after the shooting, as well as Courtney Brashear's statements in a videotaped interview with police[1] that the night of the shooting while at Desmond Williams'[2] house, she saw Desmond give Petitioner a gun wrapped in a t-shirt. Brashear also stated Petitioner said he would return "when it was done," and that when Petitioner returned to Desmond's house later, he was shaking and stated he thought he "killed him because he emptied the gun on him."[3] Finally, as Petitioner acknowledges, defense counsel was aware of Lee's recent arrest for possession of a controlled substance following a raid on Lee's home; the basis of one of the probable cause statements supporting Petitioner's *Brady* claim. (Doc. 13 at 32.) Indeed, this prompted defense counsel to address the scope of Lee's examination with the trial court, which ultimately ruled counsel could ask Lee about this potential criminal situation and its impact, if any, on his testimony. During Lee's direct examination, in fact, the prosecutor directly addressed this concern and Lee testified he was unaware of any charges having been filed or of any agreement or bargain to secure his testimony following his recent arrest. Defense counsel did not address the issue further, despite the opportunity to do so.

Accordingly, the Court does not find Petitioner has established the additional impeachment evidence is material impeachment evidence under *Brady*. *See also Burton v. Dormire*, 295 F.3d 839, 846-47 (8th Cir. 2002) (alleged withholding of a second plea deal that secured the witness's testimony against the defendant in exchange for a reduced sentence in a separate charge was not material for *Brady* purposes because (1) the jury knew of an initial favorable plea bargain that secured his testimony, and (2) "whether the jury knows of one or both plea agreements, the jury is

---

[1] Brashear's videotaped interview with police was admitted into evidence and played for the jury.
[2] For ease of reference and to avoid any confusion, the Court will refer to Desmond Williams by his first name.
[3] While Brashear maintained at trial she did not remember giving these statements to police and did not see a gun that night, she also testified that she did remember "a shirt" that Desmond "pulled . . . out of the closet."

sufficiently apprised of the potential taint on the witness' credibility to ensure a fair trial"). Thus, Petitioner has not demonstrated prejudice necessary to overcome the procedural bar to habeas relief on this defaulted claim. Accordingly, Ground One is **DENIED**.

   B.   **Ground Two**

Petitioner next argues trial counsel was ineffective for eliciting prejudicial testimony from a defense witness that corroborated Lee's testimony. Specifically, Petitioner argues while examining Desmond Williams, defense counsel elicited testimony that Petitioner was known to drive a brown Explorer. Petitioner argues this testimony corroborated Lee's testimony during the State's case-in-chief that Lee knew Petitioner to drive a gold or brown truck. In response, the State argues this claim is procedurally defaulted because it was not raised in the proceedings before the state court, and is otherwise without merit. Petitioner argues he can show cause to overcome the procedural default because post-conviction counsel was ineffective in failing to raise this claim on post-conviction review before the state court, relying on *Martinez v. Ryan*, 566 U.S. 1 (2013), and the testimony elicited was prejudicial because it supported Lee's credibility – a critical component of this case.

In *Martinez*, the Supreme Court recognized that ineffective assistance of post-conviction counsel can provide cause for a failure to raise a claim of ineffective assistance of trial counsel in an initial post-conviction proceeding. *Id.* at 14-18. In particular, the Supreme Court recognized that a petitioner "may establish cause for a default of an ineffective-assistance claim . . . where the claim should have been raised, [and post-conviction counsel] was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," in failing to do so. To overcome a procedural bar under *Martinez*, then, "the prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the [underlying] claim has some merit." *Martinez*, 566 U.S. at 14 (citation omitted). Conversely, *Martinez* provides no relief from a procedural bar when the ineffective-assistance-of-trial counsel claim is "insubstantial" because it lacks merit or factual support, or because post-conviction counsel "did not perform below constitutional standards." *Id.* at 16.

To establish ineffective assistance of counsel, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. *Strickland*, 466 U.S. at 687-88. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's

representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Additionally, to satisfy the prejudice prong, Petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 694.

During its case, the defense called Desmond to testify. Defense counsel asked Desmond, "Now, did [Petitioner] have his own vehicle, to your knowledge, or did he usually have to bum a ride?" to which Desmond responded: "They drive their – I don't know who owned it, but sometimes they had a brown Explorer. I think he came with Alesha. There was three cars, I think, three." (Doc. 7-1 at 437.) During cross-examination, the State questioned Desmond further about the car Petitioner was known to drive:

> Q. I believe you testified that [Petitioner] drove – or rode around in several different vehicles back in this time frame?
> 
> A. No. He had access to only the brown one that I knew of that he drove.
> 
> Q. Was it a brown Explorer?
> 
> A. Explorer, yes.
> 
> . . .
> 
> Q. But you had seen him riding around in a brown Explorer before?
> 
> A. Yeah, but he's not the only one I've seen driving it either, I mean.

(*Id.* at 447-48.) During the State's case-in-chief earlier, Lee testified he told a police officer investigating the shooting at the hospital he "know[s] [Petitioner] from, like, driving a gold truck." (*Id.* at 298-99.) The police officer who spoke with Lee at the hospital testified Lee mentioned "something about a brown Ford Explorer," (*id.* at 359), and a detective investigating the shooting later testified Lee stated he "knew [Petitioner] to drive what he [Lee] described as a brown Ford Explorer." (*Id.* at 374.) At the same time, on cross-examination, the second officer agreed that Lee "didn't tell [the officer] that he saw the Explorer, whether it be brown or gold, that night of the shooting[.]" (*Id.* at 388.)

In closing argument, the State referenced Desmond's testimony in relation to Lee's testimony that Petitioner "rode around in this gold truck or a brown Explorer" and argued, "[s]o even their own witnesses corroborate what John Lee says about the man that shot him." (*Id.* at 488-49.)

11

Even assuming trial counsel's performance was constitutionally deficient to the extent he elicited this corroborative testimony, Petitioner cannot show prejudice, particularly in light of the other evidence presented in this case. Lee's testimony identifying Petitioner as the shooter as reflected above was corroborated both by statements Lee made to officers investigating the shooting relatively close in time after the shooting while he was at the hospital, as well as Brashear's recorded statements to police. To the extent this testimony Petitioner now complains of corroborated Lee's testimony to some degree, it was but one piece in relation to the whole that included other stronger corroborating evidence supporting the finding Petitioner was the shooter as Lee testified. In short, in light of the testimony and evidence presented at trial, the Court finds Petitioner fails to show a reasonable probability that the outcome of the trial would have been different even if trial counsel's performance was constitutionally deficient to the extent counsel elicited this statement from Desmond at trial. Because Petitioner is not entitled to relief under *Strickland* regarding this ineffective-assistance claim, it is not a "substantial" claim for which the *Martinez* exception applies. Ground Two is procedurally defaulted and is therefore **DENIED**.

### C. Ground Three

Finally, Petitioner claims trial counsel was constitutionally ineffective for failing to investigate and subpoena testimony at trial from three individuals: Alesha Davis, Jesika Fitzpatrick, and Melvin Jackson. Petitioner argues the testimony of each would have discredited Lee's testimony and/or supported an alibi defense. Petitioner raised this claim in his amended petition for post-conviction relief under Missouri Supreme Court Rule 29.15. (Doc. 7-10 at 61, 66-68.) Following an evidentiary hearing, the state motion court denied relief, and the Missouri Court of Appeals affirmed. (Docs. 7-10 at 79-82; 7-16 at 2-11.)

In response, the State argues that because the state courts "reasonably rejected this claim on the merits," this Court must defer to the decisions of the state courts as required by 28 U.S.C. § 2254(d). As reflected above, and as Petitioner acknowledges in his reply, § 2254(d) applies a deferential standard of review for federal habeas relief when the claim has been adjudicated on the merits in a state court. The federal habeas court must defer to the state court's determination on the issue unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

§ 2254(d)(1) & (2).

In applying this standard, the Supreme Court has explained that a state court's application of the otherwise correct governing principle must be "objectively unreasonable," that is, it must be more than merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citation and quotation marks omitted); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion . . . a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable") (collecting cases). The same is true regarding a state court's determination of the facts: "erroneous fact-finding by the [state] court[] will not justify granting a writ if those courts erred 'reasonably.'" *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001) (citation omitted). On federal habeas review, the state court's findings of fact are presumed correct absent clear and convincing evidence otherwise. *Id.*; *see* § 2254(e)(1).

### 1. Alesha Davis

The Missouri Court of Appeals denied Petitioner's claim of ineffective assistance of trial counsel for failing to subpoena or secure Alesha Davis' testimony at trial, as follows:

> Williams' first point contends Huffman provided ineffective assistance when he failed to "subpoena or otherwise secure" the attendance of Davis as a witness. The following facts are relevant to this point.
>
> At the evidentiary hearing, Huffman testified that Davis was a friend of Williams. Huffman spoke to Davis prior to Williams' trial. Huffman anticipated Davis would testify that, on May 1, 2013, she saw Williams at a party and dropped him off at his mother's house around 4:00 a.m. The shooting occurred at another location at 2:59 a.m. Huffman did not subpoena Davis because he believed that she was a friendly witness and intended to testify. Huffman tried to contact Davis during the trial and did not know why Davis failed to appear.
>
> Davis' evidentiary hearing testimony related to whether she could provide an alibi for Williams around the time of the shooting. Davis did not testify, however, that she would have been willing to testify at Williams' trial, nor did she explain why she failed to appear at the trial as expected.
>
> In denying this claim, the motion court found that Davis' testimony would not have provided Williams with a complete defense, as it did not preclude the possibility that Williams had committed the crimes and did not provide a "true alibi." The motion court also found that Williams failed to meet his burden of proving that Davis would have testified at Williams' trial. The motion court found

13

that the evidence proved Davis was aware of Williams' trial, but she chose not to testify in spite of attorney Huffman's request.

Williams' point contends the motion court clearly erred in denying his claim of ineffective assistance for "failing to subpoena" Davis because: (1) the court analyzed the claim under an "incorrect standard" – failure to call a witness, instead of failure to subpoena; (2) Davis' testimony would have provided both an alibi and impeachment of Victim's identification; and (3) there is a reasonable probability that had Huffman secured Davis' presence by subpoena the outcome of the trial would have been different. We disagree for four reasons.

First, Williams failed to prove Huffman was ineffective for failing to subpoena Davis. As our Supreme Court stated in *Crenshaw*, "[t]rial counsel is not ineffective for failing to subpoena a witness to testify at trial if the conduct of the witness is such that trial counsel was reasonable in believing the witness would appear to testify without a subpoena." 66 S.W.3d at 260. Huffman testified that Davis was a friend of Williams, and Huffman thought she intended to testify at the trial. The motion court credited Huffman's testimony and found he was reasonable in believing Davis would appear to testify without a subpoena. *See id.* at 260-61. We defer to the motion court's determination of credibility. *Smith*, 413 S.W.3d at 715.

Second, Williams failed to establish Davis would have actually testified at Williams' trial. *See Worthington*, 166 S.W.3d at 577. Although Davis testified at the evidentiary hearing, her appearance there did not prove that she would have appeared at the criminal trial if she had been subpoenaed. Huffman testified that Davis knew about the trial and knew she was expected to testify for Williams, but she failed to show up. Davis did not testify that a subpoena or other effort to secure her presence at trial would have been effective. After considering the evidence, the motion court found that Williams did not prove his claim. We defer to the motion court's credibility determination. *Smith*, 413 S.W.3d at 715.

Third, Huffman did not intend to present a defense of alibi at Williams' trial. Huffman testified that he could not sufficiently account for Williams' whereabouts around the time of the shooting to provide him with an alibi. As such, Davis' testimony concerning an alibi defense was not consistent with Williams' trial strategy. It is well settled, that if a potential witness' testimony would not unqualifiedly support a defendant, failure to call such a witness does not constitute ineffective assistance. *Worthington*, 166 S.W.3d at 577; *Paulson*, 342 S.W.3d at 456.

Fourth, Huffman was not ineffective for failing to present Davis' testimony as impeachment because it would not have changed the outcome of the trial. *See Shockley v. State*, 579 S.W.3d 881, 912 (Mo. banc 2019). Considering the strength of the evidence at trial, the motion court specifically found that the following "pieces of evidence are corroborative of each other and support conviction of [Williams] beyond a reasonable doubt":

> 1) Victim's testimony that, on the night of the shooting, he recognized Movant, who was carrying a gun; 2) Officer Evans'

> testimony that at the hospital, Victim stated that he had been shot by the Movant; 3) Detective Shipley's testimony that within seconds after being shown a photo lineup, victim positively identified Movant as the shooter; and 4) Brashear's interview when she recounted seeing the Movant take a gun from "Duzzy" and then return that gun, shaking and visibly scared, saying that he thought he "killed him because he emptied the gun on him."
>
> For all these reasons, the motion court did not clearly err in denying Williams' claim that his trial counsel was ineffective for failing to subpoena or otherwise secure Davis' presence as a witness. Point 1 is denied.

(Doc. 7-16 at 5-8.)

First, Petitioner argues the state *motion court*'s finding that Davis' testimony would not have provided Petitioner a viable alibi defense is unreasonable. As reflected above, however, the Missouri Court of Appeals adjudicated this claim on the merits and found, *inter alia*, trial counsel did not intend to present an alibi defense at trial and therefore, failing to subpoena Davis' testimony (to whatever extent it could support an alibi) was not ineffective assistance of counsel. Additionally, the state court of appeals concluded Petitioner could not show prejudice to the extent Davis' testimony impeached Lee's testimony. Because the state court of appeals adjudicated this claim on the merits, Petitioner must show *that* decision is unreasonable under § 2254(d)(1) or (d)(2), otherwise the Court must defer to the state court of appeals' resolution of this claim on the merits. *See Rhines v. Young*, 899 F.3d 482, 490 (8th Cir. 2018) ("When a habeas claim has been adjudicated on the merits by the state courts, we review the last reasoned decision of the state courts.") (citation and quotation marks omitted).

The only argument Petitioner presents that the state court of appeals' decision is unreasonable under the deferential § 2254(d) standard is that the state court "unreasonably assessed the facts in determining that Davis' testimony, that one week after the shooting Lee approached her and asked her who was responsible for shooting him would not have changed the outcome of petitioner's trial." Given the evidence and testimony presented at trial including the corroborative testimony supporting Lee's testimony as well as Brashear's interview, the Court does not find Petitioner has established the court of appeals' decision was an unreasonable application of *Strickland*'s prejudice prong. *See Williams v. United States*, 452 F.3d 1009, 1013 (8th Cir. 2006) (in applying *Strickland*'s prejudice prong courts "must consider the totality of the evidence" including the proffered testimony and "gauge the likely outcome of a trial based on this total body of evidence") (citation and quotation marks omitted).

15

### 2. Jesika Fitzpatrick

Similarly, the Missouri Court of Appeals also denied this ineffective-assistance-of-counsel claim as it relates to Jesika Fitzpatrick's proffered testimony:

> Williams' third point contends Huffman provided ineffective assistance when he failed to "subpoena or otherwise secure" witness Fitzpatrick. The following facts are relevant to this point.
>
> At the evidentiary hearing, Huffman testified that he could not recall the name Fitzpatrick. Huffman did not subpoena Fitzpatrick to testify at Williams' trial.
>
> Fitzpatrick testified that she had been the girlfriend of Victim at the time of the shooting. According to Fitzpatrick, Victim moved into her residence following his discharge from the hospital after he was shot, and they lived together for about one year. According to Fitzpatrick, Victim had told her that the man who had shot Victim had either been "the white boy" or "the dark-skinned black man with a hat," but that he did not know which one shot him. Fitzpatrick admitted that she was currently on probation for five cases in various counties.
>
> Victim testified that he did not know Williams at the time of the shooting and that after he had been shot, he had heard that Williams was reputed to be the shooter. Victim identified Williams from a photo lineup as the shooter because Williams was the person who he saw shoot him. Victim denied: (1) moving in with Fitzpatrick after he had been released from the hospital; and (2) telling Fitzpatrick that he did not know whether he had been shot by the white boy or the dark-skinned black man with a hat. Victim believed Fitzpatrick was dishonest.
>
> In denying Williams' claim, the motion court found that: (1) Fitzpatrick's testimony was contradicted by the testimony of Victim and lacked credibility; and (2) Williams failed to adduce testimony that Fitzpatrick was available to testify at trial.
>
> Williams' point contends the motion court clearly erred in denying his claim of ineffective assistance concerning Fitzpatrick because she testified that she: (1) "lived in Springfield in 2014"; (2) "volunteered to testify at the evidentiary hearing"; and (3) "had heeded the motion court's subpoena compelling her testimony[.]" We disagree.
>
> Williams' argument completely ignores the motion court's finding that Fitzpatrick lacked credibility, and we defer to the motion court's determination of credibility. *Smith*, 413 S.W.3d at 715. Because Williams failed to present any credible evidence to support his claim, he failed in his burden to prove the grounds asserted in his post-conviction motion by a preponderance of the evidence. *See* Rule 29.15(i); *McLaughlin*, 378 S.W.3d at 337. Therefore, the motion court did not clearly err in denying Williams' claim that his trial counsel was ineffective for failing to subpoena or otherwise secure Fitzpatrick as a witness. Point 3 is denied.
>
> The motion court's order denying Williams' amended Rule 29.15 motion is affirmed.

(Doc. 7-16 at 9-10.)

Petitioner argues the facts identified by the motion court supporting its finding that Fitzpatrick's testimony lacked credibility (as adopted by the state court of appeals) are not supported by the record. Specifically, Petitioner points to the motion court's findings: (1) both Fitzpatrick and Lee testified the other had been unfaithful during their relationship, (2) Lee testified he and Fitzpatrick were not on good terms when their relationship ended, and (3) Fitzpatrick testified she communicated with Petitioner's family and friends prior to Petitioner's trial. (Doc. 21 at 26-27.)

Federal courts generally must defer to credibility determinations by the state court unless such determinations "were objectively unreasonable based on the record." *Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008) (citation omitted). Even if, as Petitioner argues, these findings are erroneous as a factual matter as to the parties' specific testimony, the Court notes the motion court ultimately found Fitzpatrick was not credible because of "the lack of detail to Ms. Fitzpatrick's testimony, her negative relationship with the victim, and the somewhat suspicious circumstances under which her affidavit came to be prepared and provided to the defense." (Doc. 7-10 at 81.) After a review of the evidence and testimony presented at the evidentiary hearing, the Court cannot conclude this finding is based on an unreasonable determination of the facts presented to the motion court.

Moreover, the credibility of Fitzgerald's testimony at the post-conviction evidentiary hearing is only tangential to the ultimate issue whether trial counsel was ineffective in failing to subpoena and secure her testimony at trial. Even assuming trial counsel was deficient in failing to subpoena and secure this testimony at trial, Petitioner cannot show *Strickland* prejudice were Fitzgerald to have testified at trial in light of the evidence presented at trial as reflected and described above. Thus, even if § 2254(d) were satisfied as to this ineffective-assistance claim, the Court would not otherwise find Petitioner is entitled to federal habeas relief under this claim.

### 3. Melvin Jackson

Finally, the Missouri Court of Appeals also denied this ineffective-assistance claim based on Melvin Jackson's proffered testimony:

> Williams' second point contends Huffman provided ineffective assistance when he failed to "subpoena or otherwise secure" witness Jackson. The following facts are relevant to this point.

> Huffman had spoken to Jackson on the phone. He told Huffman about a statement by Victim to Jackson that Victim did not know who had shot him. Huffman did not endorse Jackson as a witness or subpoena him. Huffman had spoken to Jackson and believed that he would appear at Williams' trial. Williams' mother attempted to reach Jackson during the trial, but she was unsuccessful.
>
> Jackson did not testify at the evidentiary hearing. In denying this claim, the motion court found that Williams failed to present any evidence to support the claim.
>
> Williams' point contends the motion court clearly erred in denying his claim of ineffective assistance for "failing to subpoena" Jackson because: (1) the court analyzed the claim under an "incorrect standard" – failure to call a witness, instead of failure to subpoena; (2) Jackson's testimony would have impeached Victim's identification; and (3) there is a reasonable probability that, had Huffman secured Jackson's presence by subpoena, the outcome of the trial would have been different. We disagree.
>
> Once again, Williams failed to prove Huffman was ineffective for failing to subpoena Jackson. The motion court found that Huffman acted reasonably in believing Jackson was a friendly witness and would appear to testify without a subpoena. *See Crenshaw*, 266 S.W.3d at 260. Because Jackson did not testify, Williams failed to prove: (1) Jackson had any relevant information; and (2) he would have provided it at Williams' trial if his presence had been secured by subpoena or otherwise. *See Worthington*, 166 S.W.3d at 577. Accordingly, the motion court did not clearly err in denying Williams' claim that his trial counsel was ineffective for failing to subpoena or otherwise secure Jackson's presence as a witness. Point 2 is denied.

(Doc. 7-16 at 8-9.)

As reflected above, the state court of appeals found, *inter alia*, Petitioner failed to establish trial counsel was ineffective because trial counsel reasonably believed Jackson was a friendly witness and would appear at trial to testify. Petitioner makes no argument this finding is an unreasonable application of *Strickland* or other federal precedent or is somehow based on an unreasonable determination of the facts. Instead, Petitioner points to the state motion court's finding that Petitioner "abandoned" the claim because he failed to present any evidence on this claim. (Doc. 21 at 28.) In his amended petition for federal habeas relief, Petitioner argues post-conviction counsel was ineffective by failing to develop and support this claim in the initial post-conviction proceeding and had post-conviction counsel done so, "petitioner would have been granted relief on his claim by the motion court." (Doc. 13 at 41.) Additionally, Petitioner argues "due to the ineffectiveness of motion court post-conviction counsel, evidence to support this claim was not adduced in petitioner's post-conviction evidentiary hearing . . . and, thus, this claim was

18

not fully developed in state court." (*Id.* at 18.) Petitioner suggests *Martinez* grants him some relief in seeking federal habeas relief under this claim. Not so.

Petitioner raised this claim in his post-conviction proceedings before the state courts and, as reflected above, the state court of appeals denied the claim on the merits. *See also Johnson v. Williams*, 568 U.S. 289, 298 ("when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary") (cleaned up). In other words, this claim is not procedurally defaulted. Rather than relying on the *Martinez* exception to a procedurally defaulted claim, then, Petitioner's argument appears (in actuality) to assert an independent claim that post-conviction counsel was herself ineffective. There is no constitutional right to effective assistance of post-conviction counsel, however. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see also Davila v. Davis*, 137 S. Ct. 2058, 2062-63 (2017) (the *Martinez* "exception treats ineffective assistance by a prisoner's state postconviction counsel as cause to overcome the default of a single claim – ineffective assistance of trial counsel – in a single context – where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal.")

Because the claim is not procedurally defaulted (i.e., since it was raised before and decided on the merits by the state courts), *Martinez* does not apply and the Court must apply the great deference afforded to the state court's adjudication of this claim under § 2254(d). Petitioner makes no argument the state court of appeals' decision finding trial counsel was not ineffective regarding Jackson's un-subpoenaed trial testimony unreasonably applied *Strickland* or was based on an unreasonable determination of the facts. Thus, the Court must defer to the state court of appeals' resolution of this ineffective-assistance claim.

    **4.**     **Conclusion**

For all the reasons explained above, Ground Three is **DENIED**.

## IV. Evidentiary Hearing

Petitioner requests an evidentiary hearing regarding these claims. Because the Court finds Petitioner is not entitled to habeas relief for the reasons explained above, Petitioner's request for an evidentiary hearing is **DENIED**. *See Schriro v. Landrigan*, 550 U.S. 465, 481 (2007) (district

court did not abuse its discretion in declining to grant habeas petitioner an evidentiary hearing where even assuming the truth of all facts, petitioner could still not be granted habeas relief).[4]

## V. Certificate of Appealability

Finally, under Rule 11 of the Rules Governing Section 2254 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a habeas petitioner. A certificate of appealability may be issued "only if [Petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because Petitioner has made no such showing, the Court declines to issue a certificate of appealability.

## VI. Conclusion

Therefore, it is **ORDERED** that:

(1) Petitioner's habeas petition is **DENIED**;

(2) Petitioner's request for an evidentiary hearing is **DENIED**;

(3) a certificate of appealability is **DENIED**; and

(4) this case is **DISMISSED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 14, 2022

---

[4] Moreover, § 2254(e)(2) provides that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings," the habeas court may hold an evidentiary hearing only if "the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence." Petitioner makes no such argument § 2254(e)(2)'s requirement is otherwise satisfied here.